BETSY ANN CHARLES et al., Appellants, v. THOMAS WHITE et al.; BETSY ANN CHARLES et al., Appellants, v. GEORGE A. NEILL et al.

Division Two, July 25, 1908.

1. FRADULENT CONVEYANCES: Parties Affected. The transfer of property in fraud of creditors, while void as to them, is binding on the parties and those in privy with them. The statutes against fraudulent conveyances are designed to protect the interests of creditors, and were not intended to affect in any manner the parties to the conveyance.

2. ————: ————: Remaindermen: Creditor's Bill: Scope of Judgment. A judgment, on a creditor's bill, based on a judgment debt owing by a deceased grantor in a deed conveying land to his children and the heirs of their body, in so far as it divests the title out of the children and their bodily heirs and vests it in the grantor's widow and his heirs at law, is void, is *coram non judice;* and a payment by the children of the judgment debt and a subsequent conveyance by them, conveyed only their life estate, and did not affect the title of their bodily heirs, whether they were parties to the suit or not.

3. ———: ———: ———: ———: **Collateral Attack.** Pleadings are the foundation for a judgment and the court has no jurisdiction to determine the interests of defendants *inter sese*, who are not adversary parties, where a determination of their interests is not embraced within the pleadings. A creditor brought a simple creditor's bill to subject land conveyed, by his deceased debtor before judgment on the debt, to his children and the heirs of their bodies, and prayed that "the deed fraudulently executed as aforesaid be set aside and held as naught, and that the land therein described be subjected to the payment of plaintiff's debt," and the answer of the children and of "the heirs of their body" by guardian *ad litem*, was that "they have no knowledge or information whether the allegations in plaintiff's petition contained are true or not, and they require strict proof of every allegation in plaintiff's petition contained." *Held*, that the court had authority under the pleadings to render judgment subjecting the land to the payment of the plaintiff's ·debt, but it had no authority to render a judgment vacating the deed, and divesting the life tenants of all interest therein and vesting the title in the grantor's widow and his heirs at law, and the judgment being void in these respects, it can be collaterally attacked, as, for instance, by a suit to quiet title brought by the remaindermen, against the grantees of the life tenants.

4. **JUDGMENT: By Consent: Against Minors: Necessary Showing.** To hold infant defendants bound by the consent of their guardian *ad litem* to the judgment rendered against them, the record should unequivocally and positively show such consent, and that is not shown by a minute on the judge's docket, "Answer by defendant filed; decree by consent," where the clerk's minutes show, "Trial, judgment and decree for plaintiff," and the judgment itself recites that the parties announced ready for trial and "this cause was tried by the court sitting as a chancellor, and after hearing the evidence the court finds," etc., but found no facts that would warrant a decree divesting the infant remaindermen of their title and vesting it in other defendants.

5. ———: **Res Adjudicata: As Between Defendants.** Unless the defendants contest an issue with each other, either upon the pleadings between themselves and plaintiff, or upon cross-pleadings between themselves, the judgment or decree will not be ·*res adjudicata* in subsequent litigation between the defendants or between some of them and the grantees of others.

6. **QUIETING TITLE: Common Source: Defective..** Where both plaintiff and defendant in the suit brought under section 650, Revised Statutes 1899, to ascertain and determine the title, claim title through a common source, it is not incumbent on plaintiff to show an indefeasible title in himself from the Government down, but it is sufficient if he show a better title

through the common source than defendant shows through the same source; and it will not avail defendant to show a defective title in the common source, nor is it necessary to pass upon the sufficiency of that title, unless defendant connects himself with a title better than and antedating that of the common source.

Appeal from Newton Circuit Court.—*Hon. F. C. Johnston,* Judge.

REVERSED AND REMANDED.

*Horace Ruark* and *Sturgis & Geyer* for appellants.

(1) That the deed from Stephen D. Sutton to his five daughters named therein "and the heirs of their bodies, forever," conveys, under our statute abolishing fee tails, a life estate to the grantees named with a remainder over to their respective children born and to be born, is elementary law. Tiedeman, Real Property, sec 47; Jones, Real Estate in Conveyancing, sec. 613, p. 505; Bone v. Tyrrell, 113 Mo. 175; Phillips v. La Forge, 89 Mo. 75; Wood v. Kice, 103 Mo. 329; Reed v. Lane, 122 Mo. 311; Godman v. Simmons, 113 Mo. 122; Clarkson v. Clarkson, 125 Mo. 381; Emmerson v. Hughes, 110 Mo. 627; Utter v. Sidman, 170 Mo. 284. (2) The fact that Sutton's deed to his daughters was made in fraud of creditors, made it void only as to such creditors as might attack it. "No rule of law is more firmly established than that a transfer of property made in fraud of creditors, while void as to them, is binding upon the parties thereto and those in privity with them." 14 Am. and Eng. Ency. Law (2 Ed.), 273 and 280; 20 Cyc. 419, 608 to 615; Stevenson v. Edwards, 98 Mo. 622; Whittaker v. Whittaker, 157 Mo. 353; George v. Williamson, 26 Mo. 190; Larimore v. Tyler, 88 Mo. 661; Van Winkle v. McKee, 7 Mo. 435; Sell v. West, 125 Mo. 628; Thomas v. Thomas, 107 Mo. 459; Hall v. Callahan, 66 Mo. 316; Bump, Fraudulent Conveyances (2 Ed.), pp. 436 and 451. (3) Al-

though a judgment or decree in a creditor's bill brought to set aside a conveyance, annuls, sets aside and makes void the conveyance, such judgment is restricted to the purpose of the suit and the parties to it. Such judgment makes the conveyance void only as to the creditor attacking it, and only for the purpose of collecting his debt. "If a conveyance is set aside by the creditors of the grantor it is set aside only as to such creditors and does not operate to revest title in the grantor, his heirs or any one claiming under him." 20 Cyc. 617; Stevenson v. Edwards, 98 Mo. 622; Mundy v. Vail, 34 N. J. Law 418; Barnes v. Railroad, 122 U. S. 1; Graham v. Railroad, 70 U. S. 704; Bell v. Wilson (Ark.), 5 L. R. A. 370; Bohn v. Weeks, 50 Ill App. 236; Keeton v. Bandy (Ky.), 74 S. W. 1047. "A decree avoiding a deed as to creditors of the grantor leaves the deed operative between the parties. Such a decree is a decree *sub modo* and binding only as to such creditors." 20 Cyc. 821; McDowell v. McMurria, 107 Ga. 812; Norton v. Norton, 5 Cush. (Mass.) 524; Knapp v. Crane, 73 N. Y. Supp. 513; Alred v. Smith, 135 N. C. 443. (4) When a decree is rendered declaring a conveyance fraudulent and void in a creditor's bill, the grantee has his option to pay the amount ascertained to be due and keep the property or let the property sell to pay same. If he pays the claim the decree is satisfied and is no longer of any effect on the conveyance. Bump, Fraudulent Conveyances (2 Ed.), p. 550; Rawson v. Fox, 65 Ill. 200; Bostwick v. Menck, 40 N. Y. 383; 20 Cyc. 822; Wait, Fraud. Convey., sec. 171; Needles v. Ford, 167 Mo. 510; Stevenson v. Edwards, 98 Mo. 625; Railroad v. Soutter, 80 U. S. 517. It is the sale thereunder and not the decree setting aside the conveyance that divests the grantee of title. Mundy v. Vail, 34 N. J. Law 418; Bell v. Wilson (Ark.), 5 L. R. A. 370; Kerr v. Hutchins, 46 Tex. 384. (5) The Rutledge judgment is not *res adjudicata* upon

the parties hereto for the reason that the court had no power under the pleadings and issues presented to divest the remaindermen of title and vest the same in the life tenants. No such question was submitted to the court and its action in attempting to adjudge something not at issue was void. Booger v. Frazier, 99 Mo. 325; 1 Black on Judgments, sec. 242; 2 Black on Judgments, secs. 618, 619; 24 Am. and Eng. Ency Law, 768, 775; 23 Cyc. 684, 1235, 1317; 1 Freeman on Judgments, secs. 118-120; 1 Herman on Estoppel, 62; Biglow on Estoppel, 92; 7 Ency. of Evidence, 801; Munday v. Vail, 34 N. J. L. 418; Hope v. Blair, 105 Mo. 85; Nemo v. Railroad, 105 Mo. App. 551; Graham v. Railroad, 70 U. S. 704; Reynolds v. Stockton, 140 U. S. 254; Barnes v. Railroad, 122 U. S. 1; Sache v. Gillette, 112 N. W. 386; Spoors v. Coen, 44 Ohio St. 497; Ransom v. Fox, 65 Ill. 202; McFadden v. Ross, 108 Ind. 512; Waldron v. Harvey, 54 W. Va. 608; Reynolds v. Stockton, 43 N. J. Eq. 211; Metcalf v. Hart, 3 Wyo. 513; Knopf v. Morel, 111 Ind. 570; Unfried v. Heberer, 63 Ind. 67; Knapp v. Crane, 73 N. Y. Supp. 513; Strobe v. Downer, 13 Wis. 11; Bogess v. Scott, 37 S. E. 709; Fithian v. Monks, 43 Mo. 502; Fish v. Lightner, 44 Mo. 269; Owens v. Link, 48 Mo. App. 534; Wilson v. Lubke, 176 Mo. 210; Garland v. Smith, 164 Mo. 1; Williams v. Monroe, 125 Mo. 588; Bell v. Wilson (Ark.), 5 L. R. A. 370; McDowell v. McMurria, 33 S. E. 709; Windsor v. McVeigh, 93 U. S. 274; 20 Cyc. 821; Alred v. Smith, 135 N. C. 443. (6) The judgment in the case of Thomas Rutledge v. Betsy Ann Charles et al., is not *res adjudicata* upon the issues herein for the reason that the life tenants under the Sutton deed were not adversaries to the infant remaindermen, but co-defendants with them. In order for a judgment to bind parties as *res adjudicata* they must have occupied adversary positions at the trial upon issues formed between them by the pleadings. McMahan v. Geiger, 73 Mo.

145; State Bank v. Bartle, 114 Mo. 276; Comstock v. Keating, 115 Mo. App. 372; O'Rourke v. Railroad, 142 Mo. 342; Cormody v. Hanick, 85 Mo. App. 659; Springfield v. Plummer, 89 Mo. App. 530; 24 Am. and Eng. Ency. Law (2 Ed.), 731; 23 Cyc. 1279; 1 VanFleet's Former Ajudication, secs. 229, 256; 1 Freeman on Judgments, sec. 158; Corl v. Riggs, 12 Mo. 430; Rudd v. Cornell, 171 N. Y. 114; Finley v. Cathert, 149 Ind. 470; Bank v. Bartsch, 51 Minn. 474; Beronio v. Lumber Co., 129 Cal. 232; Goff v. Hathaway, 180 Mass. 497; Eikenberry v. Edwards, 71 Iowa 82; Buffington v. Cook, 35 Ala. 312; Smith Bros. v. Railroad, 109 La. 782; Gardner v. Raisbeck, 28 N. J. Eq. 71; Kent v. Kent, 82 Va. 208; Koelsch v. Mixer, 52 Ohio St. 207; Hoxie v. Bank, 20 Tex. Civ. App. 462; Keagy v. Bank, 12 Ok. Ter. 33; Cleveland v. Chambliss, 64 Ga. 352; Bigelow on Estoppel (5 Ed.), 101; Cushing v. Laird, 107 U. S. 69; Jones v. Vert, 121 Ind. 140. (7) The force and effect of a judgment is not enlarged by the fact that it was rendered by consent. Holmes v. Guion, 44 Mo. 164; Short v. Taylor, 137 Mo. 517. Especially is this true where the minors' consent is by guardian *ad litem* who was at the time attorney for the consenting adult life tenants whose life estate was attempted to be enlarged to a fee. (8) Stephen D. Sutton is the common source of title. The plaintiffs claim under him as remaindermen in his deed to his daughters. The defendant by his answer says he has "by appropriate deeds and mesne conveyances taken and derived the whole of all the estates and titles of the said Sutton heirs." He put in evidence an unbroken chain of title from the Sutton heirs (life tenants) to himself, and claims in himself and grantors continuous possession for over thirty years. In suits to determine title under section 650, Revised Statutes 1899, the same rule prevails as to the common source of title as in ejectment; any defects in the common source of title are imma-

terial. Harrison Machine Works v. Bowers, 200 Mo. 219; Graton v. Land Co., 189 Mo. 322; Gage v. Cantwell, 191 Mo. 698; Sedgwick and Wait on Trial of Title (2 Ed.), sec. 803; Sell v. McAnaw, 138 Mo. 272. (9) The possession of the life tenant or his grantee is the possession of the remaindermen and for their benefit. Any outstanding title or adverse interest acquired by the life tenant or his grantee while holding such possession, either by limitation or deed, inures to the benefit of the remaindermen and cannot be used to defeat the remaindermen's title. The only right of the life tenant in such case is to require contribution as to the purchase price paid, if any. Coke on Littleton, sec. 453; 1 Kerr, Real Property, secs. 575 and 576; 1 Washburn, Real Property (5 Ed.), 129; 1 Am. and Eng. Ency. Law (2 Ed.), 807 and 808; Stevens v. Martin, 168 Mo. 410; Keith v. Keith, 80 Mo. 125; Peck v. Lockridge, 97 Mo. 558; Hickman v. Link, 97 Mo. 494; Allen v. DeGroot, 105 Mo. 442; Allen v. DeGroot, 98 Mo. 161; Melton v. Fitch, 125 Mo. 281; Manning v. Coal Co., 181 Mo. 373; Cockrill v. Hutchinson, 135 Mo. 74; Myers v. Reed, 17 Fed. 406; Dillinger v. Kelly, 84 Mo. 568; Whitney v. Salter, 36 Minn. 103. (10) The possession of a life tenant or his grantees is not, and cannot by any act or deed of his be made, adverse to the remaindermen. The Statute of Limitation does not begin to run till the death of the life tenant, and the remaindermen are not barred till ten years after such death. Hall v. French, 165 Mo. 430; Reed v. Lowe, 163 Mo. 535; Melton v. Fitch, 125 Mo. 290; Keith v. Keith, 80 Mo. 125; Fisher v. Siekmann, 125 Mo. 178; Bradley v. Railroad, 91 Mo. 498.

*Geo. Hubbert* with *Clay & Sheppard* for respondents.

(1)    The confusion and apparent conflict amongst certain cases bearing upon the doctrine involved in this case, seem to arise, more often than otherwise, out of the failure to keep in view the polar star of distinction between the sufficiency of a petition to invoke and bring into play the jurisdiction of the court on the one hand, and its sufficiency to show, on the other hand, that the plaintiff is entitled to some remedy at the hand of the court.    The jurisdiction, fully proof against any manner of collateral attack, may exist even where the plaintiff does not show himself entitled by any fact or averment in the pleading to any sort of remedy.    Foltz v. Railroad (8 C. C. A.), 60 Fed. 316, well states the distinction, and points out the true doctrine, applicable in this case:    "Jurisdiction of the subject-matter is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power.    It is not confined to cases in which the particular facts constitute a good cause of action; but it includes every issue within the scope of the general power vested in the court, by the law of its organization, to deal with the abstract question.    Nor is this jurisdiction limited to making correct decisions.    It empowers the court to determine every issue within the scope of its authority, according to its own view of the law and the evidence, whether its decision is right; and every judgment or decision so rendered is final and conclusive upon the parties to it, unless reversed by writ of error, or appeal, or impeached for fraud."    Many supporting cases are cited by him, including half a dozen decisions of this court, ranging from the 29th to the 114th volume of its reports.    In re Plymouth Cordage Co., 135 Fed.

1004; Logan Co. v. Carnahan (Neb.), 95 N. W. 813. It should not be questioned that whenever a court of record has power to entertain and determine causes of the kind in question jurisdiction to pronounce a judgment free from collateral attack is acquired by such court, if only a complaining party brings the subject and the other parties interested therein before that court, without regard to any error, however great, in the judgment with relation to such subject of action. State v. Ausherman (Wyo.), 72 Pac. 200; Stambach v. Emerson (Cal.), 72 Pac. 991; Ruppin v. McLachlin (Iowa), 98 N. W. 153; McGhee v. Bell, 174 Mo. 121; State ex rel v. McKee, 150 Mo. 241.    The decree is specific.  That court then assumed and exercised jurisdiction, not only of the subject-matter but of the rights of all persons then in being who had any interest in the land in question; and we submit that they stood for and bound all members of the classes to which they respectively belonged, inclusive of the unborn heirs who now claim interests that were contingent, under the terms of the deed, upon their being born.  Waples, Proc. in Rem, sec. 20.    The salutary principle of *res judicata* with immunity from collateral attack, which we here invoke, is now too well established and firmly settled in its scope to admit of any reasonable question or doubt as to the great mischief to be wrought permitting such collateral attacks as plaintiffs here attempt. Their assault invoked the active aid of the circuit court for the destruction of its own previous and most solemn judgment, as a court of equity and justice, of more than thirty years standing, upon which quite a hundred land conveyances, and a host of business transactions through two generations of people, have been based. (2)  Every child of either of the five grantees named in the Sutton deed who had issue, is bound by the former decree, though born thereafter, upon the principle of representation of the unborn by those defend-

ants of the same class in being at the time of the action and decree. This rule applies from the necessities of the case to all contingent interests and all deferred estates in remainder. 24 Am. and Eng. Ency. Law (2 Ed.), 758-9; 2 Blak. Judgmt., sec. 554; Mayall v. Mayall (Minn.), 65 N. W. 944; Gray v. Smith, 76 Fed. 532; Harrison v. Walton (Va.), 64 Am. St. 833; Miller v. Railroad, 132 U. S. 662; Faulker v. Davis (Va.), 98 Am. Dec. 697; Gavin v. Curtin, 171 Ill. 640; Kent v. Church, 136 N. Y. 10.

GANTT, J.—As the records in these two cases are practically identical in the facts disclosed and the questions of law presented, they will be treated together.

The action is one to determine title under section 650, Revised Statutes 1899. They were tried together in the circuit court and are submitted to this court upon the same brief. The plaintiffs claim title to the land as remaindermen under the deed of Stephen D. Sutton to his five daughters of date October 25, 1860. Stephen D. Sutton is the common source of title and by that deed he conveyed the lands in controversy, to-wit, the east half of the southeast quarter of section 19 in township 25, range 31, and also a portion of the west half of the aforesaid quarter section containing 64 acres, and a certain other tract containing three acres or more in another portion of said quarter section described by metes and bounds, and another tract containing nine acres more or less in said quarter section described by metes and bounds, and lots 5, 6 and 7, in block 4, in the town of Neosho, all of said real estate lying in Newton county, Missouri. The *habendum* clause of the said deed was in these words: "To have and to hold, the afore-granted premises with all the rights, privileges and appurtenances thereto belonging or in anywise appertaining unto the said Betsy Ann Charles, Cintilda

Sutton, Polina Sutton, Salina Sutton and Minerva Sutton and to the heirs of their bodies respectively forever, free from the claim or claims of any and all persons whatsoever." These daughters were at that time unmarried except Mrs. Betsy Ann Charles, but they were all afterwards married and all except Polina Sevier had children, "heirs of their bodies," and the plaintiffs herein are the heirs of the bodies of three of said daughters, the grantees in said deed. The plaintiffs claim as remaindermen under said deed, that their mothers each took a life estate in one-fifth of the said land with remainder to their respective children, these plaintiffs. The children of one of said grantees in said deed, Salina Ruark, are not parties to this suit. The one daughter, Polina Sevier, who never had any children, died in 1898; Minerva married James A. Stockton, and died in 1896, leaving three children, who are plaintiffs herein. Mrs. Betsy Ann Charles is still living and she with her four children, the heirs of her body, are plaintiffs herein. It is conceded by the pleadings and the evidence shows that the defendant George Neill and wife and Thomas White have acquired by mesne conveyances and own a life estate of all of the five grantees in said deed from Stephen D. Sutton to his daughters and the heirs of their bodies in the lands involved in these two cases, but that they have never acquired, by deed or conveyance, the interest or title of any of the heirs of the bodies of said grantees, the plaintiffs herein, nor have said heirs of the bodies of said grantees ever made any deed or conveyance of or parted with their interest in said land. The main defense is that a judgment was rendered in the circuit court of Newton county at the March term, 1872, which it is claimed had the effect of setting aside and annulling the Sutton deed to his daughters with the remainder over to plaintiffs, and that Sutton's children, inclusive of his daughters named as grantees in said deed,

Sutton having died in the meantime, then took said land in fee and consequently the defendants who claim by mesne conveyance from them hold said land in fee. The circuit court took this view of the case and after finding "that under the pleadings and evidence Stephen Sutton is the common source of title under whom the parties claim," refused to declare "that the judgment obtained in this court in the case of Thomas Rutledge v. Betsy Ann Charles et al. furnishes no defense to this action," and rendered judgment for defendants.    As to this judgment, plaintiffs contend that the judgment and pleadings therein show that the said suit was a creditor's bill wherein it was alleged and found that Stephen D. Sutton was indebted to the plaintiff therein, Thomas Rutledge, on a promissory note at the time he made the deed to his said five daughters conveying to them and to the heirs of their bodies the lands in controversy; that such conveyance was made by Sutton "for the purpose of avoiding the payment of his just debts, and without any valuable consideration."    It is further stated that said Sutton had died, that his estate was in the process of administration, the claim of plaintiff Rutledge allowed in the probate court, and the funds of the estate exhausted without paying but a small part of the claims.    The prayer of the petition was that the deed be set aside and "the land subjected to the payment of plaintiff's debts."    The defendants in that case were the children of Sutton, including the five daughters named as grantees in said deed, and also the remaindermen "heirs of their bodies" so far as the same were then born, being only three of the ten remaindermen, who are plaintiffs in this case.    The life tenants answered by attorney, as did the three remaindermen, then minors, by their guardian *ad litem,* to the effect that they had no knowledge as to the truth of the allegations of the petition and asking strict proof to be made.    The court rendered a judgment reciting

that Sutton being indebted on the note sued on made the deed to his daughters without any valuable consideration and to avoid the payment of his just debts and that the note had been allowed by the probate court against Sutton's estate, and only a small part thereof paid, and then proceeded to decree as follows: "It is therefore considered, adjudged and decreed by the court that the deed aforesaid and mentioned executed by Stephen Sutton and Nancy Sutton his wife to the said Betsy Ann Charles, Salina Sutton (now Salina Ruark), Polina B. Sutton (now Polina B. Sevier), Cintilda Sutton and Minerva Sutton, be and the same is hereby set aside, vacated and held for naught; and the said defendants, Betsy Ann Charles, John M. Charles, Nancy Charles, Fannie Charles, Newton Charles, Joshua Ruark, Salina Ruark, Theodocia Ruark, Belle Ruark, Walter Ruark, A. M. Sevier, Polina B. Sevier, Cintilda Sutton and Minerva Sutton and each of them be and they are hereby divested of all right and title and interest in and to said real estate hereinbefore described under or by virtue of the said deed of conveyance made and executed by said Stephen D. Sutton and Nancy Sutton, his wife, before mentioned, and the right, title and interest of said Stephen D. Sutton, in and to said real estate at the time of his death, subject to the payment of his just debts, vest and remain in the widow and heirs at law of said Stephen D. Sutton, deceased, as provided by law, in the same manner and effect, to all intents and purposes, as if said deed before mentioned had never been executed, and that plaintiff have and recover his costs in this behalf laid out and expended, and that he have execution therefor." Nothing further was done under this judgment and no sale of the land was ever had either in the circuit or probate court. It was shown that after the rendition of this judgment in the circuit court, the administrator of Stephen D. Sutton's estate petitioned

for an order of sale of this land in the probate court, but no such order was granted and a final settlement of Stephen Sutton's estate was made, which showed the Rutledge claim and note was paid in full, the final settlement containing this item, "Cash paid by parties interested in realty, $365.04." Sometime after this judgment, it appears that the heirs of Stephen D. Sutton, two sons and the five daughters, made a parol partition of the land by quitclaim deeds to each other. Thereafter the land was sold and conveyed sometimes by quitclaim and sometimes by warranty deeds, until the defendants acquired whatever title the children of Stephen D. Sutton could convey.

The defendant White, in his case, moreover set up as another defense that Stephen Sutton, though the common source of title to himself and the plaintiffs, did not in fact own the land deeded to his daughters and the heirs of their bodies, but that the same belonged to the heirs of one Sexton, but defendant White in no way connected himself with the outstanding title of the said Sexton heirs, if any, and the circuit court found as a matter of fact that Stephen D. Sutton was the common source of title of the plaintiffs and said defendant White. In the Neill case, no such question arises.

The evidence tended to show that Stephen D. Sutton went into possession of all of said land under an administrator's deed from the Sexton estate in 1849, and lived on it and cultivated it down to the time of his deed to his daughters in 1860, and thereafter with and for them to his death in 1861. After his death his wife and daughters continued in possession as life tenants under the deed to them until after the Rutledge suit in 1872. During all this time the possession was adverse and hostile to any claim of title or right to possession by the Sexton heirs. Indeed the possession of the defendants down to the present time is

hostile and adverse to any such claim. The death of the first life tenant occurred in 1896 and this suit was commenced in 1904.

As to these two cases the pivotal question is the effect of the decree in the cause of Rutledge v. Charles et al., on the creditor's bill to set aside the deed of Stephen D. Sutton to his five daughters, and the heirs of their bodies. On the part of the defendants, it is insisted that by that decree the title of the remaindermen, the plaintiffs herein, was forever divested and that the matter is *res adjudicata*. Whereas the plaintiffs insist that said decree is not *res adjudicata* as to the remaindermen, the heirs of the body of the said five daughters, for the reason that the court had no power under the pleadings and issues presented to divest the title of the remaindermen and vest the same in the life tenant; that no such question was submitted to the court, and its action in attempting to adjudge something not at issue was void. That the life tenants under the Sutton deed were not adversaries to the infant remaindermen, but co-defendants with them, and that in order for the judgment to bind parties as *res adjudicata* they must have occupied adversary positions at the trial upon the issue framed between them by the pleadings.

I. The deed from Stephen D. Sutton to his five daughters named therein and "the heirs of their bodies forever," by virtue of our statute abolishing fee-tails conveyed a life estate to the said daughters, with a remainder over to their respective children born and to be born. [Bone v. Tyrrell, 113 Mo. 1. c. 182; Reed v. Lane, 122 Mo. 311; Utter v. Sidman, 170 Mo. 284.] Under the construction given section 650 by this court in the last-mentioned case, the plaintiffs are entitled to maintain this action if they are not forever barred by the decree in the case of Rutledge v. Charles et al. There is no question that the defendants acquired the

life estate of the five daughters, but they did not get the fee unless the judgment in the creditor's bill brought by Thomas Rutledge in 1872 had the effect of divesting the remaindermen, the plaintiffs herein, of the fee in the land. It must be conceded that the language of the decree is broad and specific enough not only to render the deed from Sutton and wife to his daughters and the heirs of their bodies null and void as against the debt and judgment of Rutledge, but to divest all the title and interest which the said daughters and the heirs of their body acquired as against their father and his heirs, and moreover to vest the same in the widow and general heirs at law of said Stephen D. Sutton, and the large question in this case is, what is the true legal effect of that decree as to these plaintiffs? No rule of law is more firmly established than that the transfer of property in fraud of creditors, while void as to them, is binding on the parties and those in privity with them. The statutes against fraudulent conveyances are designed to protect the interest of creditors and were not intended in any manner to affect the rights of the parties themselves to the conveyances. This has been the uniform rule of decision in this State since Van Winkle v. McKee, 7 Mo. 435.    [Doggett v. Insurance Co., 19 Mo. 201; Whitaker v. Whitaker, 157 Mo. l. c. 353; 14 Amer. and Eng. Ency. Law (2 Ed.), 273, 276, note 3, and cases cited; 20 Cyc. 419, 608.]

As to the construction of such a decree the authorities are exceedingly numerous. In Graham v. Railroad, 70 U. S. 704, the Supreme Court of the United States announced what seems to us the best thought and most equitable rule on this subject. Said the Chief Justice: "We have seen already that, according to the allegation of the Minnesota Company in their bill now before us, the issue between Cleveland, the complainant, and the LaCrosse Company and

Chamberlain, the respondents in the cause in which that decree was made, was upon the question whether the agreement and judgment were or were not void as against Cleveland and his judgment. The decree was evidently intended to determine that issue. It was, as evidently, not intended to determine the question whether the making of the agreement was beyond the corporate powers of the LaCrosse Company, for there are no terms which affirm its inherent validity without regard to intent. It is our duty to construe the decree with reference to the issue it was meant to decide. Its words are very broad and very emphatic; but we cannot say that they were intended by the district court to have any greater effect than to avoid and set aside, as against Cleveland, the agreement and judgment impeached by his bill. We think, on the contrary, that a decree having such an effect could not have been properly rendered upon the pleadings and issue in that cause. Neither the LaCrosse Company nor Chamberlain sought to avoid the agreement or the judgment, nor asked any relief whatever as against each other. Indeed, the case shows that both regarded the agreement and the judgment as essential to their respective interests. We cannot ascribe to any court an intention, by a decree on such pleadings, to annul such an arrangement as between the parties to it, nor could we approve such action even were the intent clear beyond question. No question was made between Chamberlain and the LaCrosse Company, nor could any question arise between them of any such nature as that between those parties and Cleveland, nor could they be required, in a suit prosecuted by Cleveland to enforce satisfaction of his judgment by setting aside their arrangement as void against creditors, to submit that arrangement, as between themselves, to the action of the court. It is true that it is the constant practice of courts of equity to decree between co-

defendants upon proper proofs, and under pleadings between plaintiffs and defendants, which bring the respective claims and rights of such co-defendants between themselves under judicial cognizance.''

In Munday v. Vail, 34 N. J. Law 418, we have the prototype of the case before us. In that case, it appeared that both parties claimed under one Asa Munday. The said Munday with his wife conveyed the premises in dispute to Conger in fee in trust for the use of himself and his wife and the survivors of them, with a remainder to the children of said Munday and wife in fee. The plaintiff was the sole surviving child of such marriage. Munday died and his wife and the trustee conveyed the title to the plaintiff. The defense was that prior to the death of Asa Munday one Ephraim Munday had brought his bill in equity in which he charged that the said Asa Munday had conveyed said lands to Conger to defraud said Ephraim. The prayer of the bill in that case was, ''that the deed of conveyance of said lands so made by the said Asa Munday and Hetty, his wife, to the said John Conger, and the said deed and declaration of trust so made and executed by the said John Conger and wife as aforesaid, may, by the order and decree of the court, be set aside and declared to be fraudulent and void against the said judgment and writ of execution, and that the said judgment be decreed a lien on said lands,'' etc. In that action the plaintiff with her father and mother and Conger were all defendants. Plaintiff was an infant and appeared by her guardian and submitted her rights to the protection of the court. The decree was that the deed of Asa Munday and wife was fraudulent and void and also the declaration of trust mentioned in the pleadings, and it was decreed that the said declaration of trust was null and void and that said Conger and the said Asa Munday should deliver up the said deed and declaration of trust to be canceled. It appeared in

that case, just as it does in this case, that no further proceedings were taken under the decre, but the money due the plaintiff therein was paid to him. But the lands were subsequently sold under another decree against Asa Munday for costs. Upon this state of facts, the Supreme Court of New Jersey said: "This decree is a most extraordinary one. My respect for the court and for the counsel engaged in this proceeding leads me to the conviction that it was the result of inadvertence. It is opposed to the well-settled practice of courts of equity and to the commonest principles of justice. This certainly is clear when it is said that its effect is, if it have validity, to deprive an infant defendant of an estate vested in her, without an issue or a hearing with respect to her rights." After having stated the objects of the bill, the court further said: "No one will maintain that either the prayer of the bill or the decree founded upon these facts could properly go beyond this [to have the deed declared void as against the creditor]. The creditor had no standing to ask that the deed of trust should be annulled as between the trustee and the *cestuis que trust*. If admitted to be fraudulent with respect to creditors even, the statute of frauds ordains its validity so far as relates to the parties to it. Such, likewise, is the admitted rule in equity. But in this case the decree does, in very unambiguous language, pronounce and adjudge the conveyance in trust to be invalid, not only so far as to let in the claim of the complaining creditor, but out and out as between the trustee and the parties beneficially interested. If legal, its effect was to destroy the estates of the *cestuis que trust,* and to revert the title in fee in the settlor." Counsel did not attempt to maintain the propriety of such a decree, but argued, as counsel do here, that although erroneous it could not be called in question in this collateral suit. Conceding the general proposi-

tion that a judgment or decree of a court having jurisdiction over the controversy and the parties cannot be impeached for error, except in a direct proceeding for that purpose, the learned Chief Justice proceeded to inquire whether that doctrine applied to the facts of that case. The inquiry was, had the court jurisdiction to the extent claimed? Responding to this, Chief Justice BEASLEY said: "Jurisdiction may be defined to be the right to adjudicate concerning the subject-matter in the given case. To constitute this there are three essentials: First. The court must have cognizance of the class of cases to which the one to be adjudged belongs. Second. The proper parties must be present. And, third, the point decided must be, in substance and effect, within the issue. That a court cannot go out of its appointed sphere, and that its action is void with respect to persons who are strangers to its proceedings, are propositions established by a multitude of authorities. A defect in a judgment arising from the fact that the matter decided was not embraced within the issue has not, it would seem, received much judicial consideration. And yet I cannot doubt that, upon general principles, such a defect must avoid a judgment. It is impossible to concede that, because A and B are parties to a suit, a court can decide any matter in which they are interested, whether such matter be involved in the pending litigation or not. Persons by becoming suitors do not place themselves for all purposes under the control of the court, and it is only over these particular interests which they choose to draw in question that a power of judicial decision arises. If, in an ordinary foreclosure case, a man and his wife being parties, the court of chancery should decree a divorce between them, it would require no argument to convince every one that such decree, so far as it attempted to affect the matrimonial relation, was void; and yet the only

infirmity in such a decree would be found, upon an-
alysis, to arise from the circumstance that the point
decided was not within the substance of the pending
litigation.  In such a case the court would have acted
within the field of its authority, and the proper par-
ties would have been present; the single but fatal
flaw having been the absence from the record of any
issue on the point determined." Accordingly, it was
held in that case that the decree annulling the deed
of trust was outside of the issues in the case and the
act of the court in declaring it void was clearly *coram
non judice,* and consequently void.  And the estate did
not revert to the original grantor.  The doctrine thus
announced by the Supreme Court of New Jersey was
approved and followed by this court in Hope v. Blair,
105 Mo. 1. c. 93; and in the more recent case of Stark
v. Kirchgraber, 186 Mo. 633, Munday v. Vail, supra,
was again approved and followed.  In Reynolds v.
Stockton, 140 U. S. 254, the Supreme Court of the
United States quoted at great length from the opinion
in Munday v. Vail, and said: "We regard the views
suggested in the quotation from this opinion as correct,
and as precisely indicating the limits in respect to
which the conclusiveness of a judgment may be in-
voked in a subsequent suit *inter partes.*"  In Mc-
Fadden v. Ross, 108 Ind. 1. c. 517, the Supreme Court
of Indiana adopted the views of the Supreme Court
of New Jersey in Munday v. Vail, supra, and followed
it.  And so did the Supreme Court of Colorado, in
Newman v. Bullock, 23 Colo. 1. c. 222, 223, and so like-
wise did the Supreme Court of Minnesota, in Sache
v. Gillette, 112 N. W. 386, in which last-mentioned case,
it was said that Munday v. Vail is a leading case on
this subject, and it is followed in Reynolds v. Stockton,
140 U. S. 254.  In 1 Black on Judgments, 242, the opin-
ion in Munday v. Vail is adopted as a part of the text.
In Waldron v. Harvey, 54 W. Va. 1. c. 613, it is said:

"A decree, or any matter of a decree, which has no matter in the pleading to rest upon is void, because pleadings are the very foundation of judgments and decrees. . . . There must not only be jurisdiction as to the person affected by the decree by having him before the court by process or appearance, but there must be jurisdiction of the matter acted upon by having it also before the court in the pleadings. Multitudinous cases attest this elementary axiom of jurisdiction. If either is wanting, the decree or judgment is void, not merely voidable or erroneous."

Accordingly, we think that the trend of the courts of this country is to enlarge the definition of jurisdiction with the statement that it should, properly defined, include not only the power to hear and determine, "but power to render the particular judgment in the particular case." And the foregoing cases maintain the doctrine that where, as in this case, the court proceeds beyond the allegations of the pleadings and the prayer for relief and decrees a matter between parties defendant, to that extent, at least, its judgment is void and it is open to collateral attack.

Now applying the foregoing principles to the decree in favor of Rutledge v. The grantees of Stephen Sutton, it will be observed that the petition in substance charges that Sutton was indebted to Rutledge on a note for about $300, and had conveyed this land to his daughters with remainder to their bodily heirs without any compensation and for the purpose of avoiding his debts; that Sutton was dead and the debt had been duly allowed by the probate court. That the defendants were the grantees in said deed and their bodily heirs. The prayer of the petition was "that the deed fraudulently executed as aforesaid be set aside and held as naught, and that the land therein described may be subjected to the payment of Rutledge's debt." The answers of the defendants in that

case, the adults by their attorney, and the minors by their guardian *ad litem,* contained nothing more than the allegation, ''That they have no knowledge or information whether the allegations in the plaintiffs' petition contained are true or otherwise and they require strict proof of each and every material allegation in plaintiffs' petition contained.'' So that it appears that it was simply a creditor's bill for the purpose of subjecting this land to the payment of Rutledge's debt and for this purpose and no other to remove the Sutton deed by declaring it void as to Rutledge. Rutledge was not interested in anything else but the collection of his debt and the defendants were not called upon to meet any other charge. There were no issues raised between the defendants, the life tenants and the remaindermen as to their respective claims and rights between themselves. No such question upon the pleadings could arise. There were no adverse interests between them and they tendered no such issue to the court and yet the circuit court proceeded, not merely to decree the Sutton deed to his daughters and their children to be null and void as against the plaintiff creditor, but went further, as we have seen, and divested all the right, title and interest, not only of the daughters under their father's deed, but of the three grandchildren, who were then alive, and vested the same in the widow and general heirs at law of Stephen D. Sutton, deceased; and although this decree was never enforced by a sale either in the circuit court or the probate court, it is now maintained by the defendants that by virtue of that decree, the title of these remaindermen was completely wiped out. We are unwilling to so hold. We think upon the great weight of authority in this country that the decree divesting the title of these remaindermen and vesting it in the general heirs of Stephen

Sutton, deceased, was void and in excess of the jurisdiction of the circuit court of Newton county.

II.   Stress, however, is laid by the defendants on what is claimed to be the proof that this judgment of Rutledge v. Charles was by consent.  The only evidence of the judgment being by consent is that the minutes on the judge's docket reads, "Answer by defendants filed; decree by consent."  On the other hand, the minutes of the clerk of the court showed, "Trial, judgment and decree for plaintiff."  The judgment also shows that the parties announce ready for trial and "this cause was tried by the court sitting as a chancellor, and after hearing the evidence, the court finds," etc.  The court made a finding of such facts as would warrant the usual and proper judgment in a creditor's bill, but found no fact warranting a decree divesting the infant remaindermen of their title and vesting it in other defendants.  Doubtless there are many cases in which the consent of the parties to a decree will estop them from afterwards controverting it.  But to estop these minor plaintiffs by this mere minute, when all of them except three were unborn at that time, and those three were represented by a guardian *ad litem,* who was the attorney of record of their mothers, would be contrary to every principle of justice.  Indeed, we take it that the great preponderance of the evidence is that the cause was tried by the court and its judgment reached as the amplified entry of the decree shows upon the finding of facts and not upon the consent of these minor remaindermen.  Certainly no court will go out of its way to hold infant litigants bound by consent which they are incapable of giving. To invoke the doctrine that they are bound by consent of their guardian *ad litem,* the record should be entirely free from any doubt whatever on the subject.

III. In amplification of the first point in this opinion it may be said that unless the defendants contest an issue with each other, either upon the pleadings between themselves and the plaintiffs, or upon cross-pleadings between themselves, the judgment or decree will not be *res adjudicata* in subsequent litigation between them. There can be no doubt that upon proper pleadings a judgment may determine the rights of the defendants even between themselves, and our code provides for such a proceeding, but a judgment against defendants, if there are no issues between them, does not bind them as against each other. [State Bank v. Bartle, 114 Mo. 276; Boogher v. Frazier, 99 Mo. 325; 1 Van Fleet's Former Adjudication, sec. 256; McMahan v. Geiger, 73 Mo. 145; O'Rourke v. Railroad, 142 Mo. 342.]

IV. As to the defendant White and his codefendants, the invalidity of the administrator's deed and the proceedings under which it was made to Stephen D. Sutton, it is not seriously insisted that White and his codefendants are in any position to deny the title of the plaintiffs to the land in suit therein for the reason that both the plaintiffs and the defendants assert title under Stephen D. Sutton as the common source. In Graton v. Holliday-Klotz L. & L. Co., 189 Mo. 322, the scope of the statute, section 650, Revised Statutes 1899, was adjudicated, and it was held that the statute did not require the plaintiffs in such a proceeding to establish an indefeasible title against the whole world. By its terms, no right nor title can be litigated except such as may be asserted by the plaintiff and the defendant respectively, and no one can be bound by a decree in a suit brought thereunder except parties to the suit. And it was also ruled in that case that in a suit to recover title, it is not incumbent on the plaintiff, if he and the defendant claim title through a common source, to show an indefeasible title in himself from

the Government down, but it is sufficient if plaintiff shows that he is the owner of a better title through the common source than defendant can show through the same source. And the defendant makes no effort to show title in this case except by and through Stephen D. Sutton and has in no way connected himself with what is known as the Sexton title. We think the defect, if any, in Sutton's title cannot avail the defendant White and his codefendants in this proceeding. And it will be unnecessary as to these two cases to pass upon the sufficiency of Sutton's title, either by his administrator's deed or his adverse possession of the land under color of title.

In our opinion, the circuit court erred in holding that the plaintiffs, the remaindermen under the Sutton deed, were estopped by the decree in Rutledge v. Charles et al., and in not holding that the plaintiff had shown a better title to the land in dispute than the defendants and in dismissing their bill. The judgment is reversed and the cause is remanded to the circuit court to be proceeded with in accordance with the views herein expressed.

*Fox, P. J.,* and *Burgess, J.,* concur.