## HUNTINGTON REAL ESTATE COMPANY v. EDWIN MEGAREE, Trustee, et al.; ELIZABETH GRACE et al., Appellants.

Division Two, December 4, 1919.

1. **TRUSTEE: Active Trust: Legal Title.** The trustee of an active trust, with power to convey or to terminate the trust, created by will, is vested with the legal title to the lands by it devised to him for the use and benefit of designated persons.

2. **WILL: Vested Trust Estate: Remainder: Devise to Children and Heirs After Death.** The will devised testator's property to a trustee for the benefit of certain children and declared that "in case of death of either of my children the share of such deceased child shall be transferred or paid to the heirs at law of such deceased child." At the time of testator's death all his children were living. *Held*, that said provision of the will became inoperative as to such "heirs," the rule being that, in the absence of a contrary provision, the title vests upon testator's death; and as the will gave the trustee power to turn over the property to the children at any time after testator's death, no title vested in the heirs of such children, but the equitable title, and not simply a life estate, vested in the children named, and no remainder in their heirs.

3. ———: ———: ———: ———: **Unambiguous Words.** A devise to a trustee for use of children will not be cut down to an equitable life estate, with an equitable remainder in their heirs, unless the language used clearly indicates that such is the testator's intention.

4. **LIMITATIONS: Trust Estate.** Adverse possession under color of title for a period of ten years vests the fee simple title of land in the occupant; and the rule applies against the trustee, in whom the legal title was vested by will, and against the beneficiaries of the trust fund, who were vested with the equitable title.

Appeal from St. Louis City Circuit Court.—*Hon. William Kinsey*, Judge.

AFFIRMED.

*Irvin V. Barth* for appellants.

. ` Appellants, grandchildren of testator, who died in 1882, cannot be precluded by the Statute of Limitations through adverse possession of respondent's predecessors in title beginning in 1890, because: (1) Under the will appellants were remaindermen after a life estate. Where property is left to children, and in case of their death, the share to go "to the heirs at law" of any deceased child, an estate for life is created in the children and a remainder in the grandchildren. Bradley v. Goff, 243 Mo. 95. Courts will follow the manifest purpose and intent of a testament. Even though the first taker has a power of disposal, it is not inconsistent with the creation of a life estate and remainder over. Gibson v. Gibson, 239 Mo. 490; Schneider v. Kloepple, 270 Mo. 389; Freeman v. Maxwell, 262 Mo. 13; Trigg v. Trigg, 192 S. W. 1014. It follows that, being remaindermen, they are not barred by the Statute of Limitations. Armor v. Frey, 253 Mo. 474; Hernden v. Yates, 194 S. W. 49. (2) The interposition of the trustee, under the terms of the will, does not alter the case upon the theory that the trustee represented the remaindermen as well as the life tenants. This for the reasons: (a) The trustee did not take a fee-simple title. A trustee will take "exactly that quantity of interest, whatever it may be, which the purpose of the trust and its proper execution may require and no more." Young v. Hyde, 255 Mo. 509. Here Donovan's duties as trustee for the life tenants consisted essentially in the handling of "income" or "sums" of money. (b) Assuming that the "purposes of the trust and its proper execution" required the fee in the trustee, nevertheless the trust is active as to the life tenants only. As to the remaindermen the trust is purely passive and consequently upon the termination of the life estate the real estate "automatically vests in fee in the remaindermen by force of the Statute of Uses." De Lashmutt v. Teetor, 261 Mo. 440. Here Donovan owed no duty to the remaindermen

"other than to turn over the property to them upon the extinguishment of the equitable life estate." Accordingly, the trustee could in no sense be said to represent the remaindermen and "had at no time any power to bind the remaindermen or their title in any way" or to bar their estate by virtue of the operation of the Statute of Limitations. De Lashmutt v. Teetor, 261 Mo. 412; Luquire v. Lee, 121 Ga. 624; Perry, "Trusts & Trustees" (6 Ed.), sec. 320, p. 540; 39 Cyc. 212.

*Rodgers & Koerner* for respondent.

(1) Adverse possession under color of title for a period of ten years vests title in fee simple. R. S. 1909, sec. 1879; Franklin v. Cunningham, 187 Mo. 196. Title thus acquired can be quieted in a proceeding of this character. McRee v. Gardner, 131 Mo. 606. (2) Appellants (testator's grandchildren, unborn at the time of his death) took nothing under his will. The last clause of said will, implying as it does the death of testator's children to be a contingent event, must be construed as applying only in case any of said children should die during the testator's lifetime. Howard v. Howard, 184 S. W. 994; 30 Am. & Eng. Ency. Law (2 Ed.), 708; McClellan v. Mackenzie, 126 Fed. 701; Crossman v. Field, 119 Mass. 172. Thus construed the will vests the trustee with the legal title in fee simple, and testator's children with the equitable title in fee. R. S. 1909, sec. 579. (3) Where a certain estate is granted in plain language in one clause of a will, it cannot be lessened or cut down by a subsequent clause unless the language of such subsequent clause is as clear and unequivocal as the language of the first grant. Howard v. Howard, 184 S. W. 993. (4) The trustee under the will took the legal title in fee simple. (a) The estate of the trustee is measured by the extent of his powers and duties. Ewing v. Shannahan, 113 Mo. 188; Perry on Trusts (6 Ed.), sec. 312, p. 531; 39 Cyc. 208. (b) All trusts must be executed by the trustee out

of the estate in him vested. Perry on Trusts (6 Ed.), sec. 516, p. 536; Watson v. Pearson, 2 Exch. 592. (c) The power to invest in real estate and loans necessarily included the power of absolute disposition. Robinson v. Robinson, 105 Me. 73; Boston Savings Co. v. Mixter, 146 Mass. 104. The fact that this power was conferred upon the trustee is cogent evidence that it was the intention of the testator to clothe him with fee simple title. Ewing v. Shannahan, 113 Mo. 194; Cornwell v. Wulff, 148 Mo. 552; Garland v. Smith, 164 Mo. 1. (d) The power given the trustee to turn over to the beneficiaries any part or all of the principal of the estate held for them in trust, conclusively shows that he was vested with fee simple title. Packard v. Marshall, 138 Mass. 301; Boston Savings Co. v. Mixter, 146 Mass. 100; Appel v. Childress, 53 Tex. App. 607. (5) The trustee being barred by adverse possession, all of the beneficiaries are barred. Walton v. Ketchum, 147 Mo. 219; Schiffman v. Schmidt, 154 Mo. 204. This is so whether the beneficiaries were entitled in possession or in remainder. Meeks v. Olpherts, 100 U. S. 564; Waterman v. Hall, 220 Ill. 569; Chase v. Cartright, 53 Ark. 366; Darnall v. Adams, 13 B. Mon. 278. And whether or not, upon the termination of a preceding estate they were entitled to receive the legal estate in fee. Meeks v. Olpherts, 100 U. S. 564; Waterman v. Hall, 220 Ill. 569; Cushman v. Coleman, 92 Ga. 772; 1 R. C. L., sec. 80, p. 754.

RAILEY, C.—This is an action to quiet title under Section 2535, Revised Statutes 1909, to the following described real estate, to-wit: Lot in Block 40 of Wm. C. Christy's Addition, in Block 938 of the City of St. Louis, fronting 91 feet on the north line of Lucas Avenue, by a depth northwardly of 144 feet and 7½ inches to an alley, bounded east by Twenty-first Street. Appellants and respondent deraign title from Ann T. Yarnell, the common source, who acquired the property in 1847.

Counsel for the respective parties in interest have adopted, in this court, the very commendable practice of stipulating as to the facts in lieu of the bill of exceptions, as follows:

"It is hereby stipulated and agreed by and between counsel that the following constitute the facts embodied in the bill of exceptions, duly filed in proper time in the above-entitled cause. This statement is for the purpose of shortening the record and presenting the matter as concisely as possible to the court for its consideration.

"Title to the property here involved was acquired by one Ann T. Yarnall by deed recorded May 3, 1847, in the Recorder's Office in the City of St. Louis, in Book 14, at page 140.

"In 1867 suit on a special tax bill, issued against said property for sewer improvements, was brought by the City of St. Louis to the use of the contractor, and said Ann T. Yarnall was made a party defendant and was served by publication. Judgment was rendered by default for $399.12, and the property was sold under execution to one Joseph M. O'Shea, the sheriff's deed to said O'Shea being dated July 20, 1867.

"By deed dated September 8, 1869, said O'Shea conveyed said property to John F. Gibbons.

"In May, 1882, said John F. Gibbons died testate, his will being duly admitted to probate by the probate court in the City of St. Louis, and being recorded May 26, 1882, in Book O, at page 216.

" 'After my debts and above bequests are paid, I give and bequeath all of my estate, real and personal and mixed, to Joseph T. Donovan, in trust, for my father, Thomas T. Gibbons, my mother, Bridget Gibbons, and my beloved children, viz.: Mame Eugenia Gibbons, David William Gibbons, John T. Gibbons and Joseph Gibbons. My father and mother having together a child's share in said trust estate. The said Joseph T. Donovan shall invest the funds of said trust estate either in improved real estate in City of St. Louis or in

loans on real estate situated either in the City or
County of St. Louis. One-fifth of the income from said
trust estate shall be paid annually to each child or if
it be a minor, for or on account of its support, clothing
and maintenance, or to the said minor as my said
trustee may think proper.

" 'One-fifth of the income from said trust estate
shall be paid to my father during his natural life, and
upon his death to my mother. The said trustee may,
however, if he thinks proper, pay to either of my chil-
dren or to my father or mother any part or all of the
sum held by him in trust for such child or parent. All
sums in excess of the income paid shall be charged as
an advance of the principal to the one receiving same
and the income from such share shall be reduced in
proportion to the reduction of the principal.

" 'After the death of my father and mother the
share then held in trust for them shall thereafter be
held in trust for my sister, Lizzie, if she is then living,
but if she is dead, it shall thereafter be held in trust
for my children.

" 'After the death of my sister, Lizzie, if she shall
survive both my parents, the funds then held, in trust,
for her shall thereafter be held, in trust, for my said
children.

" 'In case of death of either of my children the
share of such deceased child shall be transferred or paid
to the heirs at law of such deceased child.'

"The inventory of the estate of the said John F.
Gibbons was offered in evidence and the property here
involved is not listed therein.

"The said John F. Gibbons left him surviving his
father, Thomas T. Gibbons; his mother, Bridget Gib-
bons; his sister, Elizabeth, or Lizzie Gibbons; his
daughter, Marie Eugenia Gibbons, and his three sons,
David William Gibbons, John T. Gibbons and Joseph
Gibbons; that the said Thomas T. Gibbons, Bridget
Gibbons and John T. Gibbons (son of said testator, John
F. Gibbons) have died since the death of the said testa-

tor, the said John T. Gibbons, son of said testator, dying. intestate, without issue and unmarried; that since the death of said John F. Gibbons, his said sister, Elizabeth, or Lizzie Gibbons, has married one W. B. Grace, and his said daughter, the said Marie Eugenia Gibbons, has married one George R. Smith and has had six children by said marriage, viz., George R. Smith, Jr., Mary Eugenia Smith, Lucile Claire Smith, Gibbons Smith, Clarence Smith and Helen Smith; that said George R. Smith, Jr., has since married defendant, Frances Smith; that said David William Gibbons has died intestate and unmarried since the death of the said testator, John F. Gibbons; that the said Joseph Gibbons (son of John F. Gibbons) is living and has never been married.

"In 1871 the said property was sold for general taxes and two collector's deeds thereto were executed by the then Collector of the City of St. Louis, C. Maguire, to one N. D. Allen. The first of said deeds was dated July 17, 1871, and the second July 18, 1871.

"In 1878 said property was again sold for general taxes and a collector's deed conveying the same, dated November 29, 1878, was executed by M. A. Rosenblatt, the then Collector of the City of St. Louis, to the said N. D. Allen.

"In 1883 it was apparently thought that the last above mentioned collector's deed was defective, and in order to correct the same another deed dated January 17, 1883, was executed by N. C. Hudson, the then Collector of the City of St. Louis, to the said N. D. Allen.

"Said N. D. Allen and wife conveyed the said property to W. D. Griswold by deed dated January 29, 1879. After the execution of the above mentioned deed of correction from Hudson, Collector, to Allen, said N. D. Allen and wife executed another deed to said property dated January 22, 1883, again conveying said property to the said W. D. Griswold.

"Said W. D. Griswold and wife conveyed said property to Laura G. Smith by deed dated April 29, 1879.

"Said Laura G. Smith died testate in 1905, devising said property to her four sons, William D. G., Hamilton, Ralph L. and Huntington Smith.

"Said William D. G., Hamilton, Ralph L. and Huntington Smith, by deed dated May 20, 1911, conveyed said property to the Huntington Real Estate Company, plaintiff in this case.

"It further appears that at one time the City of St. Louis instituted a suit to widen what was then Twenty-second Street, but is now Twenty-first Street, and in the condemnation proceedings instituted for that purpose in the Land Commissioner's Court of the County, now the City, of St. Louis, judgment for benefits was rendered against said property. Said judgment not being paid, execution was issued to the City Marshal of St. Louis and said property sold under execution. The City of St. Louis was the purchaser at the sale and has heretofore conveyed whatever interest it acquired to plaintiff in this case.

"The evidence further shows that since January, 1890, plaintiff and its predecessors in title have been in open, notorious, continuous, adverse possession of the property in question, paying all taxes, making all repairs and, through their tenants, being in actual occupation. There is no evidence as to who was in possession of the premises prior to 1890, except such inference, if any, as may be drawn from the above admitted facts. It is agreed that the aforesaid tax deeds and instruments of conveyance did not in themselves pass indefeasible title to plaintiff and its predecessors in title, but gave color of title only. Plaintiff's present claim to indefeasible fee-simple title is based upon the Statute of Limitation and the aforesaid adverse possession of said premises by it and its predecessors in title under color of title conferred by the tax deeds and other instruments of conveyance above mentioned."

Appellants claim title through the will of John F. Gibbons, who died testate in 1882.

It is respondent's contention: That appellants (grandchildren of said John F. Gibbons, and all born since his decease) acquired no interest whatever under the will, and that the trustee being barred, the beneficiaries are barred. Appellants, in their answer, ask to be declared the owners of said property and pray for a partition of same.

On October 11, 1915, a decree was rendered in favor of respondent. In due time, appellants filed their motion for a new trial, which, was overruled and the cause duly appealed by them to this court.

I. This is an action under Section 2535, Revised Statutes 1909, to quiet title to the real estate heretofore described. Ann T. Yarnall is the common source of title. By virtue of a suit upon a special tax bill, instituted in 1867, title came in due course to John F. Gibbons in 1869. The latter died testate, in May, 1882, and his estate was duly administered in the Probate Court of the City of St. Louis, Missouri. The real estate in controversy was not inventoried as a part of said estate. Appellants claim title through the will of said John F. Gibbons. Respondents claim title, by adverse possession, and the Statute of Limitations. This controversy arises over the construction of that portion of the will of said Gibbons set out in the foregoing agreed statement of facts. By virtue of the will, Donovan became the trustee of an active trust and, as such trustee, was vested with the legal title to the property in controversy. [Maxwell v. Growney, 213 S. W. 427; Lawson v. Cunningham, 275 Mo. 1. c. 146, 204 S. W. 1100; Higbee v. Brockenbrough, 191 S. W. 994; Freeman v. Maxwell, 262 Mo. 1. c. 24; Webb v. Hayden, 166 Mo. 39; Garland v. Smith, 164 Mo. 1; Simpson v. Erisner, 155 Mo. 157; Schniffman v. Schmidt, 154 Mo. 204; Walton v. Ketchum, 147 Mo. 209; Pugh v. Hays, 113 Mo. 1. c. 431-2; Ewing v. Shannahan, 113 Mo. 1. c. 193-4; Norcum v. D'Oench & Ringling, 17 Mo. 117-8; 1 Sanders on Uses & Trusts

*Legal Title.*

4—280 Mo.

(Am. Ed.), 361; Hill on Trustees (Am. Ed.), 361-2; 1 Perry on Trusts (4 Ed.), secs. 306-7; Boston Safe Deposit & Trust Co. v. Mixter, 146 Mass. 100; Upham v. Varney, 15 N. H. 463; Cushman v. Coleman, 92 Ga. l. c. 774-5.]

We are cited by appellants to De Lashmutt v. Teetor, 261 Mo. 412; Luquire v. Lee, 121 Ga. 624, and Young v. Hyde, 255 Mo. 496, 512, as presenting a contrary view, but in neither of these cases did the trustee have the power, as in the case at bar, to convey the entire trust estate to the beneficiaries at any time he may have deemed it advisable to do so.

When John F. Gibbons, the testator, died in 1882, his father, mother, sister, daughter and three sons, constituting those mentioned as beneficiaries in the will, were all living. The will provides, that: "The said trustee may, however, if he thinks proper, pay to either of my children or to my father or mother any part or all of the sum held by him, in trust, for such child or parent." By the very terms of the will, the trustee, upon the death of John F. Gibbons, could have terminated the trust, by turning over to testator's father and testator's four children all the property belonging to the estate. In order to do that, he must have been clothed with the legal title to the property, by the terms of the will.

Regardless of the law in other jurisdictions, we are satisfied with the rulings on this subject as announced in foregoing authorities.

II. That portion of the will heretofore mentioned, concludes as follows:

"In case of death of either of my children the share of such deceased child shall be transferred or paid to the heirs at law of such deceased child."

That is to say, by way of illustration, if testator's daughter, Marie Eugenia Gibbons, was dead, at the time of testator's death, and left two children, the latter

**Vested Estate.** would be entitled to the mother's one-fifth equitable interest in said estate. In other words, the above clause could only become effective when the will became effective at the death of John F. Gibbons. At the time of the latter's death, all of his children, as well as his father, mother and sister, were living. By reason of the foregoing, said provision of the will, in respect to their heirs, became inoperative. [Howard v. Howard, 184 S. W. 993-4; Henderson v. Calhoun, 183 S. W. 585-6.]

In Howard v. Howard, supra, at page 993, the second clause of the will reads: "Second. I will and bequeath to Augustus Howard, one-fourth of all my real and personal property." After making a similar provision for Peter G. Howard, in the fourth clause, the following appears: "It is also both my will and desire that Lenora E. Howard, Alpheus Howard and Peter G. Howard act as guardian (after my death) for Augustus Howard, giving to him every twelve months the interest or proceeds of his fourth of my estate. This is done to keep Augustus Howard from spending or squandering same, and should said Augustus Howard die then my will is that his share of my estate be legally divided amongst his heirs." It was held that Howard took an absolute estate in fee, under the will, and a number of cases were cited in support of the above conclusion.

In Henderson v. Calhoun, 183 S. W. 584, we had under consideration clause 8 of the will of William Calhoun, of Johnson County, Missouri, who died in 1882, which reads as follows: "8th. After all expenses are paid the balance of my estate I bequeath to Margaret A. Calhoun, Sarah Jane Boyd, Robert A. Calhoun, and William Calhoun and their heirs to be equally divided among the same, and if any of them die without issue their portion to revert to their brothers and sisters and to share and share alike." In construing the above clause, on page 586, we said: "The will of William Calhoun, taken as a whole, indicates upon its face an intention upon the part of said testator to dispose of all

his property by the terms and provisions of said will. In the absence of any expressed intention to the contrary, it will be presumed that the testator intended that the provisions of paragraph 8 of the will aforesaid should become effective at his death. We therefore hold that Mrs. Henderson, upon the death of said uncle, William Calhoun, became the absolute owner of all the property she thereafter received from his estate. [Underhill on the Law of Wills, secs. 553 and 861; 2 Jarman on Wills (6 Ed.), p. 1357; 2 Washburn on Real Property (5 Ed.), sec. 1544; Eckle v. Ryland, 256 Mo. l. c. 449; Heady v. Hollman, 251 Mo. l. c. 638; Tindall v. Tindall, 167 Mo. l. c. 225; Chew v. Keller, 100 Mo. l. c. 368; Martin v. Lachasse, 47 Mo. l. c. 593; Collier's Will, 40 Mo. 287; Anderson v. Menefee, 174 S. W. (Tex. Civ. App.) l. c. 908; Rhode Island H. Trust Co. v. Noyes, 26 R. I. 1 .c. 334.] The rule upon this subject is ably stated in 2 Underhill on Law of Wills, sec. 861, as follows: "Under the rule elsewhere explained, by which a modern will speaks as of the date of the death of the testator, every gift to a person who is alive at that date vests at once, in the absence of an expression of an intention that the vesting shall be postponed. It will be presumed, when the testator does not expressly or by implication indicate that the vesting of the title to his bounty is to be postponed, that he means it to vest at once upon his death. His silence upon this point will raise a conclusive presumption that the interest in the gift is to vest as soon as the instrument by which it is given shall take effect, which, under the general rule, is at his death.' The foregoing quotation from Underhill is well supported by the other authorities cited. Mrs. Henderson was therefore the absolute owner of the property in controversy at the time of her death.''

The principle announced in the above cases is consistent with the power given the trustee to turn over the property at any time he might deem proper after testator's death.

III. We are of the opinion that the legal title to the property in controversy, by the terms of the will, at the time of testator's death in 1882, was lodged in the trustee, Joseph T. Donovan; that at said date, testator's father and mother, as well as his sister and the four children, were alive, and by the terms Equitable Estate in Remainder. of said will became the equitable owners in fee of the real estate aforesaid; that Mary Eugenia Smith (*nee* Gibbons) was the equitable owner in fee, at said date, of the undivided one-fifth interest in said property, and that none of her children ever became remaindermen by the terms of said will, or acquired any interest therein, as heirs at law of their mother, who is still living and one of the appellants in this cause. There is nothing on the face of the will to indicate that the parties heretofore mentioned, who were alive when testator died, should not take the absolute equitable title. The language at the conclusion of the will is insufficient, under the existing laws of this State, to cut down the absolute equitable title aforesaid, appearing upon the face of the will, to an equitable estate in remainder, based upon the indefinite clause heretofore mentioned. [Middleton v. Dudding, 183 S. W. 443 et seq.; Howard v. Howard, 184 S. W. 993-4; Lemp v. Lemp, 264 Mo. 533; Coronet v. Coronet, 248 Mo. l. c. 234; Sevier v. Woodson, 205 Mo. l. c. 214.]

In Middleton v. Dudding, supra, the testator had conveyed to his wife an absolute fee simple title to the property by the express terms of the will. Testator and his wife were childless, and some two years after the execution of the will he evidently became dissatisfied with the arrangement which had been made, as the property would go to his wife's relations, if she died without issue. He thereupon added a codicil to the original will, using the following language: "And I further state, should my wife Annie die without a will or having disposed of above property, one-half of property shall go to Bessie Watkins . . . and the other

one-half to the children of said J. R. S. McCune by his second wife." The testator's wife made no disposition of the property conveyed by will or otherwise. It was claimed by the beneficiaries named in the codicil, that the legal effect of the latter was to cut down the wife's absolute estate, to a life estate, with power of sale and the right to dispose of same in her lifetime by a will. As shown upon page 456 of 183 S. W., the authorities cited by appellants herein, and many others, were urged in defense of the testator's right to cut down the absolute estate by the codicil as above indicated. Bond, J., in behalf of Court in Banc, upon page 444, in the majority opinion, said: "A devise of property in general terms, without descriptive or qualifying words denoting the character and extent of the estate conveyed, may be converted into a life estate by other words, expressions, or clauses necessarily implying that the estate first granted is for the life only of the devisee, with a remainder thereafter to other persons. [Burnet v. Burnet, 244 Mo. l. c. 499; Walton v. Drumtra, 152 Mo. l. c. 507; Gibson v. Gibson, 239 Mo. l. c. 506.] This for the reason that in such devises the intention to create a life estate in the first taker may be shown either by express terms or tantamount terms. In the latter instance the words employed must be unambiguous, and must exclude any other construction than an intention to create a life estate only in the first taker, with a limitation over a remainder thereafter. This is the settled law of this State, and is the correlative of the immemorial rule that a devise of a fee in terms, or by words necessarily describing an absolute estate, cannot be annulled except by later language in the will, which expressly or by necessary implication, arising from words equally as clear and conclusive as those in granting the fee, cuts down the previous grant of the fee." Woodson, J., alone dissented.

The opinion in Gibson v. Gibson, 239 Mo. l. c. 506, so strongly relied on by appellants, after reviewing many authorities, contains the following: "In what we

have above expressed we do not wish to be understood as holding that what would otherwise be a fee in the first taker can be cut down to a less estate by ambiguous words, or words not as clear and strong as those in the devise to the first taker.''

With ·the opinion in the Middleton-Dudding case confronting us, we would not feel justified in holding that any of testator's grandchildren are equitable remaindermen, in the real estate aforesaid and, especially so, in view of the fact that the parent is still living. [Sec. 579, R. S. 1909.]

IV.  Having heretofore reached the conclusion that Joseph T. Donovan, the trustee, became vested with the fee simple legal title to said estate, and the first takers the equitable fee simple title in said land, it remains to be determined whether respondent has become the legal owner of said real estate by limitation and adverse possession.  The agreed statement of facts, contains the following:

Limitations.

"The evidence further shows that since January, 1890 plaintiff and its predecessors in title have been in open, notorious, continuous, adverse possession of the property in question, paying all taxes, making all repairs, and, through their tenants, being in actual occupation.  There is no evidence as to who was in possession of the premises prior to 1890, except such inference, if any, as may be drawn from the above admitted facts.  It is agreed that the aforesaid tax deeds and instruments of conveyance did not in themselves pass indefeasible title to plaintiff and its predecessors in title, but gave color of title only.  Plaintiff's present claim to indefeasible fee simple title is based upon the Statute of Limitations, and the aforesaid adverse possession of said premises by it and its predecessors in title under color of title conferred by the tax deeds and other instruments of conveyance above mentioned.''

Adverse possession under color of title, as described in the stipulation, for a period of ten years, vested the

fee simple title to said land in respondent. [Sec. 1879, R. S. 1909; King v. Theis, 272 Mo. l. c. 422-3; Johnson v. Calvert, 260 Mo. l. c. 456-7; Franklin v. Cunningham, 187 Mo. l. c. 196; Kirton v. Bull, 168 Mo. 622; Scannell v. Am. S. F. Co., 161 Mo. 606.]

V. The trustee, having been barred by limitation and adverse possession, all the beneficiaries mentioned in said will are likewise barred. [Ewing v. Shannahan, 113 Mo. 188, l. c. 201-2; Walton v. Ketchum, 147 Mo. l. c. 219; Schiffman v. Schmidt, 154 Mo. 204, l. c. 212; Meeks v. Olpherts, 100 U. S. l. c. 569; Waterman Hall v. Waterman, 220 Ill. l. c. 576-7; Cushman v. Coleman, 92 Ga. l. c. 774-5; 1 Ruling Case Law, sec. 80, p. 754, and cases cited.]

a. The trustee, so far as the record shows, made no effort to take possession of the land in controversy, although he held the legal title thereto. Nor does it appear that the first takers, who held the equitable fee simple title, ever requested the trustee to obtain possession of said property or to assert title thereto. If the trusee does not perform his duty, the beneficiaries are not without a remedy in equity to require him to do so. [Norcum v. D'Oench & Ringling, 17 Mo. l. c. 118.] In this case, both the trustee and beneficiaries stood by and permitted plaintiff to acquire, by adverse possession, a good title to the land in question.

VI. We have endeavored to consider all the material questions presented in the record before us. The trial court found the issues in favor of respondent and entered its decree accordingly. The judgment thus rendered was for the right party, and is therefore affirmed.

*White* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All the judges concur.