ALICE P. PRICE and MAE ANDERSON, Appellants, v.
AMELIA MORRISON.

Division Two, December 31, 1921.

1. **FRAUDULENT CONVEYANCE: Valid as Between Grantor and Grantee.** A conveyance made by the owner of real estate to his son, for the purpose of placing the property beyond the reach of his then wife and his judgment creditors, is valid as between the grantor and grantee, although no actual consideration therefor may have passed from the grantee to the grantor.

2. ————: **Bought by Father: Conveyance to Son.** Where a father bought real estate and had the grantor convey it to his son, in order to defeat the father's judgment creditors, the son acquired the absolute fee simple title, regardless of any secret arrangements he may have made with his father to reconvey to him.

3. ————: **Devise: Trusteeship: Reinvestment: Extinguishment of Equitable Title.** Where a father conveyed his own land, and caused the vendor of another tract which he had bought to convey it to his son, for the purpose of placing the lands beyond the reach of the father's then wife and his judgment creditors, both conveyances being without any valuable consideration paid by the son to the father, a will thereafter made by the son by which he devised said real estate to his said father in trust for two sisters, "which trust is to be held and maintained by my father for twenty years after my death, if he shall so long live, but if he should not so long live then it is my will and desire that all of my property and real estate shall descend to my sisters in equal parts or shares after twenty years, or at the death of my father if he should die within a period of twenty years after my death" and "whenever my father deems it to the best interest of the devisees to sell or dispose of my real estate, he shall do so and invest the proceeds in other real estate or personal property, but such conveyances, purchases and investments are to be made by him as trustee for my sisters," vested the legal title in the father, and the equitable title in the two sisters, and unless the real estate was sold by the trustee for the purposes of reinvestment for the benefit of the sisters their equitable title was not extinguished by any attempted conveyance made by him, but on his death they became the absolute owners in fee of the said real es-

late notwithstanding he had within the twenty years attempted to convey it to a subsequent wife in consideration of her agreement to marry him.

4. ———: ———: ———: **Acceptance.** Where a will, duly probated, devises real estate in trust for certain sisters of testator, and the trustee accepts the trusteeship imposed upon him by its provisions, neither he nor his privies can' thereafter assert any claim of ownership adverse to the fee simple title held by the testator.

5. ———: ———: ———: .In Consideration of Marriage. Where the testator was the owner' of the legal title to real estate, conveyed to him by his father for the purpose of defrauding his creditors, devised it by will to his father in trust for his sisters, the trustee had no legal right to give it away or to convey it to a subsequent wife in consideration of her agreement to marry him.

6. **CONVEYANCE BY TRUSTEE: Notice: Face of Deed.** A deed conveying real estate devised to a trustee for testator's sisters, which purports to have been made by the grantor as trustee of the testator's estate, shows on its face that he was not attempting to convey it as his individual property, but charged the grantee with notice that the legal title was held by the grantor as trustee for the sisters, and that he was only authorized to sell and convey it for the purposes mentioned in the will.

7. **EQUITY: Appellate Practice.** On appeal from a judgment in a suit in equity, the Supreme Court examines the record and passes upon the merits of the case, and renders a decree in accordance with the facts and the law, and will direct the trial court what judgment to render, even to the extent of divesting the legal title of real estate out of defendant and vesting it in plaintiffs.

Appeal from Ste. Genevieve Circuit Court.—*Hon. Peter H. Huck,* Judge.

REVERSED AND REMANDED (*with directions*).

*Edward D. Hays* and *Spradling & Burrough* for appellants.

(1) · The conveyances from James M. Morrison and wife and Edward H. Engleman and wife to Lawrence

Morrison were placed of record shortly after their execution, and respondent is barred from attacking such conveyances for fraud unless she can prove that such conveyances were made to defraud her. Brinkerhoff v. Juden, 255 Mo. 698, 723; Davidson v. Dockery, 179 Mo. 687, 697; Reynolds v. Faust, 179 Mo. 21, 28. (2) Sec. 2199, R. S. 1919, required respondent at the time she accepted deeds from James M. Morrison, trustee of the estate of Lawrence Morrison, to take notice of the fact that James M. Morrison had executed such deed in his representative capacity. She was also charged with knowledge of the fact that the real estate in controversy had formerly been conveyed to Lawrence Morrison and by the latter devised to James M. Morrison in trust for appellants. Seibert v. McAnally, 223 Mo. 505, 518; Garrett v. Wiltse, 252 Mo. 699, 712. (3) As to what a trustee may accept in consideration of a transfer under a power of sale, the question depends very largely upon the terms of the power. Unless expressly so directed he need not ordinarily sell for cash. But, in any event, he must exact a valuable consideration and has no power to make a gift of the property or convey it for a merely nominal consideration. 28 Am. & Eng. Ency. Law, 1002; 39 Cyc. 360; Everette v. Railway, 67 Tex. 430. (4) An express power to sell can be exercised only for the purposes contemplated thereby. Thus, where the power is given merely for the purpose of paying debts, no valid sale can be made for any other purpose than the discharge of such debts. And so, under a power to sell for the benefit of the estate, there is no authority to make a sale which is not for the benefit of the estate. But any conveyance coming within the terms of the authority and tending to promote the grantor's object will be regarded as a valid exercise of the power of sale. 28 Am. & Eng. Ency. Law, 1000; Cornet v. Cornet, 269 Mo. 298, 317. (5) The respondent was not a purchaser of the real estate in controversy for a valuable consideration. The "value" necessary to constitute one a purchaser for value must be a valuable consideration as

distinguished from a good consideration. A valuable consideration is defined to be money or something that is worth money. Love and affection, while sufficient as a consideration between the parties, is insufficient to constitute one a purchaser for value. Strong v. Whybark, 204 Mo. 341, 346; Aubuchon v. Bender, 44 Mo. 560, 565. (6) The beneficiaries under the will of Lawrence Morrison received no consideration for the conveyance of James M. Morrison, trustee, to Amelia Green. Trustees with power of sale are bound to sell the estate under every possible advantage for the beneficiaries, and if there are different *cestuis que* trusts, they must act with a fair and impartial attention to the interests of all. 2 Perry on Trusts, (5 Ed.) 441, sec. 770; Chesley v. Chesley, 49 Mo. 540; Holdsworth v. Shannon, 113 Mo. 508, 521. (7) Where a deed or other conveyance is executed in the name of the grantor "as trustee," the grantee is chargeable with knowledge of the trust, and with constructive notice of the contents of the instrument creating the trust, and of any limitations as to the trustee's authority to transfer or convey. In the case of lands, a purchaser is charged with constructive notice of whatever appears in the instruments constituting his chain of title. Hagerman v. Sutton, 91 Mo. 519, 533; Mason v. Bank of Commerce, 16 Mo. App. 275, 278; Turner v. Hoyle, 95 Mo. 337; Payne v. Bank of St. Charles, 43 Mo. App. 377, 382; Third Natl. Bank v. Lange, 51 Md. 138; 23 Am. & Eng. Encyc. Law, 508; 1 Story's Eq. Jur., sec. 400.

*Oliver & Oliver* for respondent.

(1) James M. Morrison was as between himself and his children, including appellants, at all times until the 21st day of December, 1916, the real and equitable owner of the property in dispute, and had at that time the absolute right to convey it to this respondent, if he saw fit to do so, and upon such terms as he desired. (2) If we are wrong as to our first position, then we say

that James M. Morrison as trustee acted within the powers conferred upon him by the will of his son, Lawrence Morrison, in making the deeds to respondent, and that for that reason the deeds should not be set aside, but that the decree of the trial court should be affirmed. (3) The evidence shows by clear, direct and uncontradicted evidence from respectable, honorable and disinterested sources that J. M. Morrison was the real and true owner of the property herein involved and that he had conveyed the legal title of it and of all his property to one of his sons, Lawrence, as trustee for himself. He continued in possession of it, managed it, paid the taxes on it, paid for it with his own money, exercised all acts of ownership over it, and finally had his son Lawrence's will so prepared as to devise the property back to him with the power and right to dispose of it as to him seemed best without accounting to any court therefor. It was his property and he had a right to dispose of it as to him seemed best. McMurray v. McMurray, 180 Mo. 526; Byrd v. Ward, 1 Mo. 396; Stevenson v. Smith, 7 Mo. 610. (4) Plaintiffs had notice of and knowledge of the fact that their father had conveyed the legal title to everything he had to their brother, Lawrence; that Lawrence held as a mere trustee for their father. Lawrence could not complain of the conveyances thereafter made by his father and herein sought to be set aside and plaintiffs who claim directly through him have no greater right. Ober v. Howard, 11 Mo. 425; Valle v. Bryan, 19 Mo. 423. (5) The presumption of law is that J. M. Morrison properly performed his duties and obligations, and the burden was on plaintiffs, appellants, to disprove that presumption. Lenox v. Harrison, 88 Mo. 491; Boynton v. Miller, 144 Mo. 681, 687. The language of the will means what it says, and this court will so interpret it and will give effect to the instrument as written. St. Louis L. & B. Assn. v. Fueller, 182 Mo. 93; Boyer v. Allen, 76 Mo. 498; 39 Cyc. 348; Graven v. Allen, 100 Mo. 293, 298; Walton v. Drumtra, 153 Mo. 489. (6) Notwithstanding the instrument under which

appellants claim, the will of Lawrence Morrison, specifically gives to James M. Morrison absolute power to sell and notwithstanding that same will specifically recites that the said James M. Morrison shall not be accountable "to any court for the discharge or execution of said trust," still appellants have gone, in violation of the express terms of the will under which they claim, to a court of equity and that court, after hearing all the testimony and seeing the witnesses, decreed that the deeds made by James M. Morrison were valid and binding. "All modern adjudications agree that a conveyance which confers an absolute power of disposal, creates a fee in the grantee." Walton v. Drumtra, 152 Mo. 489, 506; Russell v. Eubanks, 84 Mo. 82. A recital in a deed of the payment of the consideration named therein is prima-facie evidence that it was at the time paid. Appellants introduced no evidence in this case to rebut that presumption. McCartney v. Finnell, 106 Mo. 445, 451; Anderson v. Cole, 234 Mo. 4; 18 Corpus Juris, 265.

RAILEY, C.—This action was commenced in the Common Pleas Court of Cape Girardeau County, Missouri, on January 28, 1918, and transferred by change of venue to the Circuit Court of Ste. Genevieve County, Missouri, where it was tried before Judge Huck.

In the first count of said petition, plaintiffs claim to be the owners, as tenants in common, of certain real estate described therein, located in the city of Cape Girardeau, Missouri, and seek to set aside and cancel a warranty deed, of date, December 21, 1916, made by James M. Morrison, as trustee of the estate of Lawrence Morrison, deceased, to the defendant, conveying therein the real estate described in said first count of the petition. The second count is similar to the first, in which the plaintiffs seek to set aside and cancel a warranty deed made by said Morrison, as trustee aforesaid, to defendant, on December 26, 1916, conveying therein about thirty acres of land located in Cape Girardeau County, Missouri, and described in said count.

Each count alleges that the real estate described therein was the property of Lawrence Morrison, deceased, who died testate in 1914, in Cape Girardeau County aforesaid. Each count alleges that said Lawrence Morrison left a will, which was duly probated in the Common Pleas Court of said last-named county, on December 23, 1914; that by the terms of said will said Lawrence Morrison devised to said James M. Morrison, in trust for plaintiffs herein, the real estate described in both counts of the petition; that the trusteeship aforesaid, vested in said James M. Morrison, was created for a period of twenty years, or for a period equal to the lifetime of said James M. Morrison; that said will provided that the real estate aforesaid, either at the end of the twenty-year period, or at the termination of the trust by the death of said James M. Morrison, should descend in equal parts to the plaintiffs herein; that said James M. Morrison departed this life in January, 1918, and that said trust was thereby terminated; that all of said property covered by said trusteeship thereupon descended to and vested in these plaintiffs, in equal parts; that the defendant herein was the wife of said James M. Morrison at the time of his death, and had been married to him for about one year; that defendant's name, prior to said marriage, was Amelia Green. Both counts allege that said James M. Morrison, trustee aforesaid, and this defendant, entered into a conspiracy to defraud these plaintiffs, and deprive them of the ownership of said real estate, whereby said James M. Morrison, as such trustee, promised to, and did, execute to said defendant the respective warranty deeds, of date December 21 and December 26, 1916, heretofore mentioned, subject to the encumbrances then standing against said real estate; that the deed mentioned in the first count contains the expressed consideration of $1200, while the consideration in the other deed is designated as $800; that each of said warranty deeds was duly recorded in Cape Girardeau County aforesaid, in 1917. Both counts allege that the consideration mentioned in said deeds

was fictitious and never paid; that no real consideration passed to said trustee for the benefit of these plaintiffs; that at the time of the execution of said warranty deeds, said Morrison, as trustee under the terms of his trusteeship, had no legal authority to make either of said deeds, etc. Each count of petition concludes with a prayer, in which the court is asked to cancel said warranty deeds; to divest said defendant of the title acquired thereby, and to vest the same in these plaintiffs, subject to such encumbrances as rested against said real estate at the time of said conveyances. General relief is also asked in each count of petition.

The amended answer, as to each count of petition, admits that at the time of the death of said James M. Morrison he was the husband of defendant; that defendant had been married to him for a period of about one year; that defendant's name, prior to her marriage to said James M. Morrison, was Amelia Green; that the said James M. Morrison died in the month of January, 1918; that on December 21, 1916, said Morrison executed and delivered to defendant the warranty deed described in the first count of the petition; that on December 26, 1916, said Morrison executed and delivered to defendant the warranty deed described in the second count of said petition. Said answer contains, after the above admissions, a general denial of all the allegations in both counts of the petition.

For further answer to both counts of the petition it is averred that said James M. Morrison, by the provisions of said will, was given the power to sell or dispose of any of the real estate aforesaid, without giving bond for the performance of the trust imposed in him, and was further relieved from accounting to the court for the execution of said trust. It is further averred that if said James M. Morrison has not accounted to plaintiffs for the property described in the petition, they must look to his estate for the assertion of any rights which they may have in the premises.

Said answer, as to each count, states that said James M. Morrison, during his lifetime, married three times; that his first wife, Ida Crushon, died about December 10, 1899; that of said marriage the following children were born: Lawrence, Alma P., Maggie Mae, Harry and Fred; that about August, 1903, he married, as his second wife, Lona Brannock; that the domestic relations between said James M. Morrison and his second wife were very unpleasant; ''that at, about and during the years 1906 and 1907, the said James M. Morrison was harassed by said second wife in his domestic life and was harassed by creditors instituting suits and obtaining judgments against him, and that he did, on or about the 2nd day of July, 1907, make, execute and deliver to his son, Lawrence Morrison, quitclaim deeds to all of his property situated in Cape Girardeau County, Missouri, and elsewhere; that said James M. Morrison conveyed said property to his son, Lawrence, not as an absolute conveyance, but in trust for himself, and the said conveyance was made for the sole purpose of depriving his said second wife, with whom his relations were so unpleasant, and his creditors from realizing on or out of his property.''

The answer further alleges that, after said conveyance to Lawrence, said James M. Morrison continued to occupy the property described in the first count of the petition as his homestead, and continued, after executing said deed to Lawrence, to exercise acts of ownership over the property described in both counts of the petition; that about the year 1913, said James M. Morrison had his son, Lawrence, make the will in controversy, which gave to his father the right of disposition of said property, etc.; that in consideration of defendant agreeing to marry said James M. Morrison, and for other valuable considerations, he executed and delivered to her the two deeds, dated in December, 1916, sought to be cancelled in the petition; that pursuant to said arrangement, the defendant and said Morrison were married and lived together on the property described in the first count of the

291 Mo.—17

petition, until the death of said James M. Morrison in January, 1918; that the property described in the first count of the petition had a $1200 encumbrance against it at the time of the execution of said deed on December 21, 1916.

The reply is a general denial of the new matter contained in above answer. It also alleges, defendant had notice, when she received said warranty deeds, that said James M. Morrison held said real estate under the terms of the Lawrence Morrison will, as trustee aforesaid, and that he had no equitable interest therein; that said conveyances to defendant were not made for the benefit of these plaintiffs, but solely for the benefit of said James M. Morrison, and in violation of his duty as trustee. Said reply further alleges that defendant, by reason of the facts aforesaid, is estopped from claiming any interest in said property, etc.

It was admitted by defendant at the trial below that James M. Morrison, on July 2, 1907, and prior thereto, was the owner in fee of the real estate described in the first count of petition, and that he is the common source of title as to said real estate. It was admitted by defendant, that on July 2, 1907, said James M. Morrison and Lona Morrison, his wife, executed a quitclaim deed to said Lawrence Morrison, conveying to him the real estate described in the first count of the petition, for the expressed consideration of $800; that said deed was duly acknowledged and filed for record in the office of the Recorder of Deeds in and for Cape Girardeau County, Missouri, on July 6, 1907, and was recorded in Book 43 at page 132. It was admitted by defendant that on January 8, 1908, said James M. Morrison obtained a decree of divorce from his said wife, Lona Morrison, in the circuit court of the above county. It was admitted by defendant that on October 1, 1907, and prior thereto, Edward H. Engleman was the owner in fee of the real estate described in the second count of petition, and that he is the common source of title as to said real estate. It was admitted by defendant that on October 1, 1907, Edward

H. Engleman and wife conveyed said real estate, described in the second count, by warranty deed, to said Lawrence Morrison, for the expressed consideration of $1200, which said deed was duly acknowledged and properly filed for record in Cape Girardeau County aforesaid, on October 5, 1908, and recorded in Book 49, at page 468, of the Recorder's office. It was admitted by defendant that Lawrence Morrison died on December 21, 1914, while a resident of Cape Girardeau County aforesaid; that he left a will which was duly proven and admitted to probate in the Cape Girardeau Court of Common Pleas, on December 23, 1914, and that no letters of administration were applied for during the lifetime of said James M. Morrison, nor until January 18, 1918, one week after his death.

The will aforesaid, without the formal parts, reads as follows:

"Article First: I desire the payment of all my just debts, and funeral expenses, which are few and small, as soon after my death as may be.

"Article Second: I will and devise to my father James M. Morrison, all of the real estate, personal property, money and choses in action wherever the same may be found, in trust for my two sisters, to-wit: Maggie May Anderson, nee Maggie May Morrison, and Alma P. Morrison, which trust is to be held and maintained by my father for twenty years after my death, if he shall so long live. But if he should not so long live then it is my will and desire that all of my property and real estate shall descend to my sisters in equal parts or shares after twenty years, or at the death of my father if he should die within a period of twenty years after my death.

"Article Three: It is further my will and desire that if my sister Alma P. Morrison should depart this life without living issue or decendants, then it is my will and desire that all that part of my estate devised to her by this will shall descend and vest in my sister Maggie May Anderson, but if at the expiration of this trust she be dead, her share shall descend to her children or their de-

scendants under the law of descent and distribution under the laws of the State of Missouri.

"Article Four: It is my will and desire that my father, James M. Morrison, in trust for twenty years, if he should live so long after my death, hold said property; but if he should not live so long then he is to hold said property in trust so long as he does live. It is also my will and desire that whenever my father, James M. Morrison, deems it to the best interest of the devisees to sell or dispose of my real estate, personal property or choses in action, he shall do so and make fitting conveyances and transfers to the purchasers of the same, and that he invest the proceeds derived from the same in real estate or personal property, and re-sell and re-convey the same as in his judgment he may deem best for my sisters or their descendants, but said conveyances, purchases and investments are to be made by him as trustee for my sisters or legatees.

"Article Five: It is my will and desire that this last will and testament shall be probated as soon after my death as may be, but it is my further will and desire that no court shall require my trustee, James M. Morrison, who is also named as executor of my estate, shall require him to give bond for the performance of this trust, nor that he be required to account to any court for the discharge or execution of said trust, nor that he be required to make settlement to any court in regard to the duties or actions imposed by this last will and testament.

"I further authorize my said executor and trustee to sell all my property and real estate at public or private sale and make conveyances of the same without being required first to procure an order of sale from any probate court, or report to any probate court, or ask approval of sale of any real estate or property so sold as such trustee or executor.

"It is my will and desire that, if at any time in my father's judgment it would be to the benefit of my sisters, or either of them, to have some advancement of

money from the trust fund, he will advance to them such funds or amounts, but said advances to neither of them to exceed approximately their interest in said trust fund.

"Lawrence Morrison."

It was admitted by defendant that said James M. Morrison was the father of Lawrence Morrison, Alma P. Price and Maggie Mae Morrison, and that said James M. Morrison died on January 11, 1918, while a resident of Cape Girardeau County, Missouri.

Respondent offered in evidence the two warranty deeds dated December 21 and December 26, 1916, sought to be cancelled herein, which have been sufficiently described heretofore.

Defendant, over the objection of plaintiffs, was permitted to examine a number of witnesses, whose testimony tended to show that James M. Morrison paid for the real estate in controversy, described in the second count, and that Lawrence Morrison paid no part of the purchase price of same to Edward H. Engleman; that said property was conveyed by Engleman to Lawrence Morrison, at the instance of James M. Morrison, to keep the latter's creditors from reaching same. Over plaintiffs' objection, the defendant offered testimony tending to show that Lawrence Morrison paid nothing for the real estate described in the first count of petition; that said James M. Morrison, after the legal title to said real estate was vested in Lawrence Morrison, continued to exercise acts of ownership over it, paid the taxes thereon, and occupied the property described in the first count of the petition. Over the objection of plaintiffs, the defendant was permitted to prove by general reputation, in the neighborhood, that James M. Morrison was supposed to be the real owner of the property in controversy.

Appellants offered in evidence certain tax receipts showing that the real estate in controvery was assessed to Lawrence Morrison, and that the taxes were paid on same by James Morrison as trustee. Plaintiffs offered testimony tending to show that James M. Morrison, as

trustee of the estate of Lawrence Morrison, deposited money in the banks, and checked against the same as such trustee; that he transacted other business, relating to said real estate, as trustee aforesaid.

Plaintiffs had the defendant sworn as a witness, and offered to examine her with reference to said warranty deeds, and the consideration for same, etc. Counsel for defendant objected to her examination by plaintiffs, on the ground that she was an incompetent witness under the law, etc. The court sustained respondent's objection and excluded said testimony. Thereupon counsel for appellants had the record show what they sought to elicit from defendant as a witness, etc. The court again ruled that said evidence was incompetent. An exception was saved to above rulings.

The foregoing covers substantially all the facts presented in the record. The trial court took the case under advisement, until October 31, 1919, at which date, it found the issues in favor of defendant, on both counts of petition, dismissed plaintiffs' bill, and entered judgment against them for costs, etc. Plaintiffs, in due time, filed their motion for a new trial, which was overruled, and the cause duly appealed by them to this court.

I. It appears from defendant's amended answer, and from the undisputed evidence in the case, that James M. Morrison, the common source of title, conveyed the real estate described in the first count of petition, to his son, Lawrence Morrison, on July 2, 1907, for the expressed consideration of $800, for the purpose and with the intention of placing said property beyond the reach of his second wife and his judgment creditors. While said conveyance may have been void as to said judgment creditors, yet, as between said James M. Morrison and his son, Lawrence Morrison, it conveyed to the latter the absolute fee simple title to said real estate, although no actual consideration may have passed between said parties. [Gammage v. Latham, 222 S. W. (Mo.) l. c. 471-2, and cases cited;

*Fraudulent Conveyance.*

Butte Inv. Co. v. Bell, 201 S. W. (Mo.) l. c. 886 and cases cited; Rowley v. Rowley, 197 S. W. (Mo.) l. c. 155; Derry v. Fielder, 216 Mo. l. c. 192-3-4; Creamer v. Bivert, 214 Mo. 473; Charles v. White, 214 Mo. 187; Davidson v. Dockery, 179 Mo. l. c. 696-7; Whitaker v. Whitaker, 157 Mo. l. c. 353, and cases cited; Van Winkle & Randall v. McKee, 7 Mo. 435.]

The above authorities leave no room for cavil or doubt, as to the established law of the State, in respect to the foregoing matter.

It may be conceded for the purposes of the case, that Lawrence Morrison paid no consideration to his father for said quitclaim deed. Even if the grantee did secretly agree with his father, that he would re-convey to the latter, the real estate aforesaid, yet, as the conveyance aforesaid was made to defraud creditors, a court of equity would not require the son to re-convey said property.

II.   It is undisputed that James M. Morrison bought the real estate described in the second count of the petition, from Edward H. Engleman and wife, October 1, 1907, and that the deed therefor, at the instance of said James M. Morrison, was made directly to said Lawrence Morrison, as grantee, in order to defeat the judgment creditors of said James M. Morrison. Under the authorities cited, in the preceding proposition, Lawrence Morrison acquired the absolute fee simple title to the real estate described in the second count of petition, regardless of any secret arrangement he may have made with his father—if one was made—to re-convey to him the real estate aforesaid.

*Voluntary Deed.*

III.   The will in controversy was executed on September 16, 1913. At that time, Lawrence Morrison was the absolute fee simple owner of the real estate in controversy, described in both counts of the petition, and remained such owner up to the time of his death, on December 21, 1914. By the terms and provisions of the will

*Extinguishment of Equitable Title.*

heretofore set out, James M. Morrison, at the death of testator, became vested with the legal title to the real estate in controversy, as trustee for these plaintiffs, while the equitable title to said real estate became vested by the terms of said will in plaintiffs, subject to the legal right of said trustee, to sell said real estate, under the provisions of said will, in a manner authorized by law, in order to re-invest the proceeds thereof for the benefit of these plaintiffs. [Dunbar v. Sims, 283 Mo. 356, 222 S. W. 838; Huntington Real Estate Co. v. Megaree, 280 Mo. 41, 217 S. W. 301.] Unless the real estate aforesaid was sold by James M. Morrison, as trustee aforesaid, for the purposes of re-investment for the benefit of these plaintiffs, their equitable title to said property was not extinguished, and on the death of said James M. Morrison, they became the absolute owners in fee of all the real estate in controversy here.

IV. As heretofore shown, Lawrence Morrison, at the time of his death, was the owner in fee of the land described in both counts of the petition. James M. Morrison accepted the trusteeship imposed upon him by the provisions of the will aforesaid, and hence, **Trusteeship: Acceptance.** neither he, nor his privies, could thereafter assert any claim of ownership in said real estate adverse to the fee simple title held by Lawrence Morrison therein at the time of his death. Said James M. Morrison, with full knowledge of all the facts heretofore mentioned, having accepted said trusteeship and acted thereunder, had no legal right to sell and convey said real estate, or any part thereof, except in good faith, for the purposes of re-investment in behalf of plaintiffs, as heretofore stated. [Milan Bank v. Richmond, 217 S. W. (Mo.) l. c. 76-7, and cases cited; Sebree v. Ry. Co., 212 S. W. (Mo.) l. c. 16, and cases cited; Lawson v. Cunningham, 275 Mo. l. c. 150; State ex rel. v. Citizens Bank, 274 Mo. l. c. 73, 202 S. W. 382; Hector v. Mann, 225 Mo. 228.]

V.   It may be said in passing that James M. Morrison had no legal right, as trustee aforesaid, to give away said property or to convey the same to defendant in consideration of her agreement to marry him.

*In Consideration of Marriage.*

In Cornet v. Cornet, 269 Mo. 1. c. 316, the will in controversy there directed the trustee "to manage such trust fund, and to make the same productive in such manner as he may deem most safe and advantageous." In construing the above language, we said: "It is not nor can it be said that this conferred any other or different power than to use his best judgment in investing in such securities as are approved by the rules of equity as investments for trust funds."

The same principle is announced in Trigg v. Trigg, 192 S. W. ('Mo.) 1. c. 1014, and Gibson v. Gibson, 239 Mo. 1 c. 507.

We are satisfied from the evidence in this case, that the alleged sale of the real estate in controversy, from said James M. Morrison as trustee to defendant, was made in violation of his duty as trustee, and is invalid; that both of the warranty deeds from said Morrison, as trustee, to defendant, should be set aside and cancelled.

VI.   The two warranty deeds sought to be cancelled in this case show on their face that said James M. Morrison was not attempting to convey said real estate to defendant as his individual property.   On the contrary, both of said deeds purport to have been executed by said James M. Morrison as trustee of the estate of Lawrence Morrison, deceased.   The defendant in dealing with said trust property was charged with notice that the legal title to said real estate was held by said James M. Morrison as trustee for the use and benefit of these plaintiffs, and that he was only authorized to sell and convey the same for the purposes of re-investment in their behalf.

*Notice: Face of Deed.*

We accordingly hold that defendant, by virtue of said warranty deeds, became a trustee *ex maleficio,* and holds the legal title to the real estate in controversy for the use and benefit of these plaintiffs as tenants in common. [Elliott v. Machine Co., 236 Mo. 546; Phillips v. Jackson, 240 Mo. l. c. 335; Case v. Goodman, 250 Mo. l. c. 114-5, 156 S. W. 698; Case v. Sipes, 280 Mo. l. c. 118, 217 S. W. 306; Hess W. & V. Co. v. Grain E. Co., 280 Mo. l. c. 196, 217 S. W. l. c. 503.]

VII.   As this is a proceeding in equity, we are required to examine the record, and pass upon the merits of the case.   In performing this duty, we have not been **Conclusion.** able to reach the same conclusion as did the trial court in respect to either the facts or the law under which the rights of the parties hereto should be determined.   We hold that respondent is neither an innocent purchaser, nor one for value.

We accordingly reverse and remand this cause, with directions to the trial court to set aside its decree, and to enter a new decree in favor of plaintiffs, cancelling the two warranty deeds from James M. Morrison, trustee for the estate of Lawrence Morrison, deceased, to the defendant; and as a part of said decree, to divest said defendant of the legal title to the real estate described in both counts of the petition, and vest the same in these plaintiffs as tenants in common. *White* and *Reeves, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court.   All of the judges concur.